[No. 480.   January 6, 1892.]

## NATHANIEL BELL, APPELLANT, v. WILLIAM SKILLICORN ET AL., APPELLEES.

MINING CLAIM—POSSESSION—TITLE—EVIDENCE.—An open, visible, and actual possession of land by a person claiming to be the owner is prima facie evidence of title in the person so possessed. By "prima facie" is meant evidence sufficient to establish title until a better title is shown.

ID.—PATENT—EJECTMENT—INSTRUCTIONS.—In an action of ejectment for the recovery of a mining claim, under section 1570, Compiled Laws, held by plaintiff under a patent from the United States, which was admitted in evidence, an instruction of the court that, if plaintiff's vein was within lines formed by artificial monuments which were placed around it at the time of the survey for patent, it would make no difference whether the monuments and survey were properly connected with the surveys of the public lands, that the location of the monuments would determine and control the location of the vein, was a proper instruction, and settled the description of the land in the patent to be the locus in quo of the land in controversy.

Id.—Adjoining Owners—Burden of Proof.—In such case, where it appeared defendants had entered into the land included within the side lines of the patent, and taken large quantities of ore therefrom, and their defense was that, as owners of an adjoining claim, they had followed a lode, on its dip, the apex of which was within their claim, within the side lines of plaintiff's claim extended downward vertically as, they claimed, they were authorized in such case by act of congress—Held: Plaintiff having established a prima facie case when the defendants undertook to show that, by a certain act of congress, they were given the right to follow a lode from the sides of their claim on to the plaintiff's, and take ore therefrom, the burden of proof as to the existence of such facts as are contemplated by that act, and of their compliance with its provisions, shifted, and was upon them.

Appeal, from a judgment in favor of defendants, from the Third Judicial District Court, Grant County. Judgment reversed, and new trial ordered.

The facts are stated in the opinion of the court.

H. L. Pickett and Catron, Knaebel & Clancy for appellant.

John D. Bail, S. B. Newcomb, and Fielder Bros. & Hefin for appellees.

Lee, J.—This is an action in ejectment, brought by plaintiff Bell, against Skillicorn and Snyder, defendants, for the possession of a mine called the "South Extension of the Pacific Lode," particularly described in the declaration, and for $25,000 damages, etc. The defendants pleaded not guilty. The cause was tried by a jury at the August term, 1890, and a verdict of not guilty rendered. A motion for a new trial was made and overruled, and an appeal taken. The pleadings, record, evidence, objections, and exceptions taken to the rulings of the court and motion for new trial are all included in the record in proper bills of exception, as far as required. On the trial the plaintiff, to establish his cause, introduced a patent from the United States to James Edgar Griggs' minor

heirs, proper conveyances from Griggs' heirs to the plaintiff, also identified the surface of the ground in question with that set out in the patent, and also that defendants had entered into the land included within the side lines of the patent and had taken a large quantity of ore therefrom, amounting to $3,612 net. This proof stands uncontradicted. Defendants, not denying that they had entered into the land included within the plaintiff's side lines extended down vertically, claimed that they had entered upon the same by following another lode, on its dip, the apex of which lay outside of the plaintiff's side lines, and that they (defendants) had entered upon the said claim within the side lines of plaintiff extended downward vertically, by following said other lode, whose apex lies outside of plaintiff's side lines, and claimed that their lode cut off and took the place of plaintiff's lode, or rather that plaintiff's lode ceased to exist, and that defendants' lode only continued thereafter downward. The evidence upon this proposition was all conflicting.

Counsel for appellees in their brief contend that it is not true that the proof stands uncontradicted as to the identity of the surface ground claimed by plaintiff with that set out in the patent to the Griggs heirs, from whom plaintiff deraigns title; and that, while they (appellees) have followed their said vein, which has its apex within the exterior boundaries of their location on its dip beyond their western side line, drawn down vertically (as they had the right to do), they deny that they entered into or through the side lines, extended down vertically, of any land described in plaintiff's patent, or of any land upon which the plaintiff or his grantors ever had any valid location. Even if that is so, it would be contracting the issues to a much narrower limit than would be justified by the pleadings or contemplated by the statute under which

the suit was brought. Section 1570 of the Compiled Laws provides: "An action of ejectment will lie for the recovery of the possession of a mining claim, as well also of any real estate, where the party suing has been wrongfully ousted from the possession thereof, and the possession wrongfully detained." The possession by the plaintiff of the land in question is admitted by the defendants.

MINING claim:
possession:
title: evidence.

In their argument in their brief they say: "The plaintiff's and defendants' mines lie side by side, and close to each other, and they have been working their respective mines for several years last past. Each party was well acquainted with the workings of both mines, and had free access to them. Bell had known for a long time that the defendants were working on what they claimed to be their own vein, and within the side lines of his mine as claimed. by him." Open, visible, and actual possession and occupation of real estate by a person claiming to be the owner is prima facie evidence of title in the person so in possession. The words "prima facie" mean evidence sufficient to establish title unless some person shows a better title. Barger v. Hobbs, 67 Ill. 592. The admission is full to the effect of the possession and occupation by the plaintiff, and therefore we think the statement of fact as given is correct.

It is also contended by the defendants in error that the plaintiff's claim, as described in the patent, in its call for connection with the public lands would, if so surveyed, throw the plaintiff's location in another place, and the defendants would not, if located in accordance therewith, be guilty of having entered upon the same. The rule in determining the exact locality of a tract or boundary of land is that recourse must first be had to natural objects; second, to artificial marks; and, third, to course and distance. The court admitted the patent

PATENT: eject-
ment: instruc-
tions.

in evidence, and followed the rule strictly in an instruction to the jury in regard to it, as follows:  "If plaintiff's vein is within side lines formed by artificial monuments which were placed around the same at the time of the survey thereof for patent, it would make no difference whether said monuments and survey were properly connected with the surveys of the public lands, but the locations of the said monuments would determine and control the location of said vein or lode."  This instruction states the law correctly, and, as admitted, seems to settle the description of the land in the patent to be the locus in quo of the land in question.

Amongst the various errors assigned by the appellant one is that the court erred in instructing the jury that the burden of proof in the trial below was upon the plaintiff.  The instruction in this connection is as follows:  "The defendants plead 'not guilty,' and this plea in effect denies the plaintiff's cause of action, and puts the plaintiff upon proof of all the material allegations of his declaration, and the burden of proof is upon the plaintiff to maintain his case by preponderance of the evidence.  You should consider all the evidence in the case that you believe to be true in determining whether the plaintiff has a preponderance of the evidence, and if, after having considered all the evidence in the case that you believe to be true, you are not satisfied that the plaintiff has proven the material allegations of his declaration by a preponderance of the evidence, or if you believe from the evidence that a preponderance is with the defendants, you should find for the defendants."  This instruction upon the issues formed by the pleadings states the law correctly in saying "the burden of proof is upon the plaintiff;" but the question arrises whether, from the evidence, the burden was not shifted from the plaintiff

*Adjoining owners: burden of proof.*

to the defendants, and the jury should have been so instructed. The distinction concerning the burden of proof seems, according to some of the law writers, a little obscure. 2 Thomp. Trials, p. 1319, says: "Many judges seem to use the term as a sort of jargon, without any definite conception of its real meaning. Those who have some definite conception of its meaning are unfortunately divided in opinion upon the two following propositions: The first is that, so long as the evidence is directed to a single issue, or, more properly speaking, to a single proposition of fact, the burden of proof never shifts, no matter how little evidence is adduced by the party sustaining the burden, or how much is adduced by the opposing party. The other is that, although the evidence may be directed to the same issue or proposition of fact, yet when the party who in the beginning sustains the burden in respect of such issue or proposition of fact introduces such evidence as, if believed, makes out what is frequently called a 'prima facie case,'—that is, shows that the proposition which he affirms is true—the burden of proof shifts upon the other party to rebut or to avoid the so-called 'prima facie case' thus made." Mr. Thompson appears to hold to the former view to the exclusion of the latter. At the risk of being classed by the learned author with those that utter jargon, we believe the first proposition to be true, and that the latter one is not inconsistent with it, and in a given case may be equally true. The case of Powers v. Russell, 13 Pick. 76, in the opinion by Chief Justice SHAW, has long been regarded a leading case and standard of authority upon the question. We fully adopt his views, and, as it is the principal case to which Judge Thompson refers to support the position taken by him, we quote an extract therefrom: "It may be useful to say a word upon the subject of the burden of proof. It was stated here that the plaintiff had made out a prima

facie case, and therefore the burden of proof was
shifted and placed upon the defendant. In a certain
sense this is true. Where the party having the burden
of proof establishes a prima facie case, and no proof to
the contrary is offered, he would prevail. Therefore,
the other party, if he would avoid the effect of such
prima facie case, must produce evidence of equal or
greater weight to balance and control it, or he will fail,
Still the proof upon both sides applies to the affirma-
tive or negative of one and the same issue or proposi-
tion of fact, and the party whose case requires the
proof of that fact has all along the burden of proof.
It does not shift, though the weight in either scale may
at times preponderate. But where the party having
the burden of proof gives competent and prima facie
evidence of a fact, and the adverse party, instead of
producing proof which would go to negative the same
proposition or fact, proposes to show another and dis-
tinct proposition, which avoids the effect of it, there
the burden of proof shifts, and rests upon the party
proposing to show the latter fact.'' The views of Judge
SHAW were followed by Judge PHILLIPS, a judge of
eminent ability, while sitting in the place of Justice
BREWER during the time that distinguished justice was
on the circuit bench. The case is very similar to the
one under consideration, and should be regarded as
high authority. In the opinion the judge says: '' Error
is assigned to the action of the court in allowing de-
fendants' counsel to open and close the argument to
the jury. To properly understand this action of the
court a brief reference to the state of the pleadings is
necessary. Owing to the particular character of the
averments of the petition as to the jurisdiction and the
grounds of defendants' claim, a question of law arose
at the outset as to whether or not the plaintiffs should
not go so far in their proofs as to maintain these alle-
gations. But the court became satisfied that the

question of jurisdiction had practically been eliminated by the action of Judge BREWER in striking this issue from the answer, and later, on a careful reading of the answer, satisfied the court that it in effect admitted plaintiffs' title to the surface location of the Battle Mountain and Little Chicago claims, and directly admitted the invasion of the side lines of the plaintiffs' claim. Under the issues as they really stood the only burden that the law imposed upon plaintiffs was the mere formal introduction of the patent in evidence, and proof of the quantity and value of the ore taken. As it was not to the interest of defendant to disprove the presence of valuable ore at this point, the evidence on the issue was brief, and merely as to value. If, forsooth, the plaintiffs saw fit to extend this mere formal inquiry over a wider field, it was not demanded by the pleadings or by the court. It is manifest from the trial, the charge of the court, and this motion for a new trial, that the real burden rested, and heavily, on the defendants. They held the laboring oar throughout on all vital issues in question. From them the burden of the real issue never shifted. Under such a peculiar condition of the trial I felt that common fairness demanded that defendants' counsel should open and close the argument. This view of the real equity of the rule in question I have long entertained. I fought for it while at the bar, and shall endeavor to impartially maintain it, as one founded in justice and equity, while I remain on the bench." Cheesman et al. v. Hart et al., 42 Fed. Rep. 98.

Many other cases might be cited in support of the proposition as laid down by the learned judge. But the supreme court of the United States has authoritively settled it as a question of practice for us, and we need not look further, unless that court should see fit to change their ruling upon it. In Greenleaf's Lessee v. Birth, 6 Pet. 302, that court say: "In the present

case the plaintiff has shown prima facie a good title to recover. The defendant sets up no title in himself, but seeks to maintain his possession as a mere intruder, by setting up a title in third persons, with whom he has no privity. In such a case it is incumbent upon the party setting up the defense to establish the existence of such an outstanding title beyond controversy. It is not sufficient for him to show that there may possibly be such a title. If he leaves it in doubt, that is enough for the plaintiff. He has a right to stand upon his prima facie good title, and he is not bound to furnish any evidence to assist the defense. It is not incumbent on him negatively to establish the nonexistence of such an outstanding title; it is the duty of the defendant to make its existence certain.'' This terse and emphatic language leaves no room for conjecture as to the meaning which is intended to be conveyed, and it only leaves us to determine whether or not the plaintiff below made the prima facie case which entitles him to the application of the rule. The record shows that he introduced a patent from the United States, with proper deeds of conveyance from the patentee or his heirs to the plaintiff, and this the supreme court of the United States holds is sufficient to recover in ejectment. In Bagnell v. Broderick, 13 Pet. 436, it is said: ''Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government in reference to the public lands declares the patent the superior and conclusive evidence of legal title. Until it issues, the fee is in the government. By the patent it passes to the grantee, and he is entitled to recover the possession in ejectment.'' If no other evidence had been introduced, the court would have directed the verdict. So far as the title set up by virtue of the patent and deeds introduced by the plaintiff is concerned, the burden of proof would remain with the plaintiff, notwithstanding any

proof that defendants might offer to contradict or dis-
prove the same.  But if the defendants set up a title in
themselves, independent of the proofs made by the
plaintiff, then they must, in regard to the title thus set
up, assume the burden of proof, and maintain the same
by a preponderance of the evidence; and this goes to the
extent of proving all acts and things that would be re-
quired to constitute such right or title.  Thus the supreme
court says: "It is a general principle that the party who
sets up a title must furnish the evidence necessary to
support it.  If the validity of a deed depends on an act
in pais, the party claiming under that deed is as much
bound to prove the performance of the act as he would
be bound to prove any matter of record on which its
validity might depend.  It forms a part of his title.  It
is a link in the chain which is essential to its continuity,
and which it is incumbent on him to preserve."  Wil-
liams v. Peyton's Lessee, 4 Wheat. 77.  The defend-
ants, in order to defeat the effect of the prima facie
case thus made by the plaintiff, set up a right or title
in themselves to a part of the land in question, not-
withstanding the patent and deeds of the plaintiff, by
showing that, although such facts existed, yet they
(defendants) were working upon and taking ore from
a lode which solely had its apex within their (defend-
ants') side lines, and in its dip or downward course
had departed from defendant's side lines drawn verti-
cally downward, and had entered the side lines of the
plaintiff, drawn vertically downward; that the same is
a true fissure vein, with characteristic dip, and between
characteristic side walls, and exhibiting characteristic
ore, and that they had been and were following such
lead, with its apex between the side lines of the de-
fendants' claim, and were taking ore from said vein or
lode, and from no other, and in so doing had passed
the side lines of the plaintiff's claim drawn vertically
downward, and were taking ore from their vein or

lode upon land included in plaintiff's claim, and covered by plaintiff's patent. While under the mining laws of the United States such a defense would be proper, and, if clearly proven, sufficient, yet, under the rulings before referred to, the burden of proof would shift, and clearly be on the defendants, who set it up, to sustain it by a preponderance of the evidence. It is, therefore, our conclusion, when the plaintiff had introduced the patent from the general government, with the deeds of conveyance from the patentee or his heirs to the plaintiff, that he had made what in law is termed a "prima facie case," and that he was entitled to the common law presumption that his lines extend down to the center of the earth. But when the defendants undertook, notwithstanding the proofs introduced by the plaintiff and the presumption of law attached to the same, to establish the fact that, by virtue of a certain act of congress, which contemplates the existence of a certain state of facts and a strict compliance with the provisions and conditions of the same, they were given a right to follow a mineral vein or lode from or across the side lines of their claim into or onto the plaintiff's, and extract ore therefrom, then the burden of proof as to the existence of such state of facts, and the compliance with all the requirements, conditions, and terms of the act, shifted and was upon the defendants. The instruction holding that the burden of proof was upon the plaintiff during the entire trial was error, and the motion for a new trial should have been sustained. Therefore, the judgment will be reversed, and the cause remanded, with direction to grant a new trial.

O'BRIEN, C. J., and FREEMAN and SEEDS, JJ., concur.