(No. 16752.—Decree affirmed.)
WILLIAM C. SAMUELS *et al.* Appellants, *vs.* FREDERICKA
WORST, Appellee.

*Opinion filed October 28, 1925.*

1. PARTITION—*parol evidence may be considered to determine
intention of parties assigning interest in estate.* Where heirs have
assigned their interest in an estate in consideration of the assignee
paying the debts and funeral expenses, it is proper for the court,
in a suit for partition, to resort to parol evidence in order to place
itself in the position of the contracting parties, so that in constru-
ing the writing it may understand the language used in the sense
intended by the persons using it.

2. CONTRACTS—*when assignment of interest of heirs will oper-
ate as a conveyance.* Where heirs have assigned their interest in
an estate in consideration of the assignee paying the debts and
funeral expenses, in equity the instrument of assignment is suffi-
cient to convey the real estate where it is the intention of the par-
ties that it shall have that effect, and the assignee's undertaking is
ample consideration for the assignment notwithstanding the prop-
erty received is worth several times the amount of the debts and
funeral expenses.

3. SAME—*meaning of word "estate," as used in instrument of
assignment.* Where there are no words in the context to limit it,
the word "estate," when used in an instrument of conveyance, is
usually held to include every kind of property, and when used in
an instrument executed by ·heirs assigning all their interest in an
estate the word is sufficiently comprehensive to include both real
and personal property.

APPEAL from the Superior Court of Cook county; the
Hon. OSCAR HEBEL, Judge, presiding.

HENRY J. GIBBS, and EDWARD J. KELLEY, for appellants.

W. W. MAXWELL, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Dorothea Samuels died intestate March 26, 1924, seized
of a lot in the city of Chicago improved with a two-story
brick building of the value of $4500 and personal property

worth $520. As her heirs she left two brothers, William C. and Herman C. Samuels, and Minnie Karstedt, Amelia Keil, William Luedke and Fredericka Worst, children of a deceased sister. She bought the real estate in question in 1907 and lived on the premises until her death. Her brothers lived a short distance from her, but neither of them had been in her home since she bought it nor had they seen her for several years. Mrs. Worst, who was with her aunt when she died, telephoned her uncles to come to her home to arrange for the funeral. Herman and his wife arrived at the Worst home about 7:30 o'clock in the evening, and William and his son, daughter and son-in-law arrived about half an hour later. Mrs. Worst told those present that her aunt had requested her to look after her burial and had told her that she wanted her to have whatever property remained after debts and funeral expenses had been paid. While the witnesses differ with respect to details, they all agree that it was finally decided that Mrs. Worst should arrange for the funeral and burial of Miss Samuels. Charles Lohrentz, a real estate agent who lived in the neighborhood, was called into the house to reduce the agreement to writing. After some discussion he prepared the following instrument:

"CHICAGO, *March 26, 1924.*

"For and in consideration of one and no/100 dollars and for other good and valuable considerations, we do hereby sell,. assign and convey, all our interest in the estate of our deceased sister, Dora Samuels, to our niece, Fredericka Worst.

"It is understood and made a part of this assignment, that the said Fredericka Worst pay all the debts and funeral expenses which may be against said estate or which may be incurred in her burial."

This instrument was signed by William and Herman and delivered to Mrs. Worst. Thereupon she went to an undertaker and arranged with him to prepare the body for burial. On April 14 she paid the undertaker's bill, which amounted to $445.63. Between the day of the funeral and the date the undertaker's bill was paid, appellants prepared and delivered to appellee the following writing: "You are

hereby notified that because of your failure to live up to the agreement you had us sign upon the death of my sister, we hereby revoke the authority therein granted and insist upon the probate of the estate of Dora Samuels, deceased." On the petition of William, his son, Herbert, was appointed administrator of the estate of the deceased.

Appellants filed in the superior court of Cook county their bill for the partition of the real estate among the heirs of Dorothea Samuels, alleging in their bill that the assignment. of March 26 was procured by appellee from appellants by fraud and misrepresentation, and that at the time the notice of revocation was served upon appellee she had incurred no obligation by reason of the assignment of March 26, and that said assignment was void for want of consideration. Appellee filed an answer to the bill, and a cross-bill, affirming the validity of the assignment of March 26 and asking partition accordingly, and appellants filed an answer to the cross-bill. The cause was referred to a master, who took and reported the evidence with a recommendation that the lands be partitioned in accordance with the prayer of the cross-bill. The chancellor entered the decree recommended, and this appeal followed.

There is no evidence in the record to support the charge that the instrument executed by appellants March 26 was obtained by fraud and misrepresentation. Appellants are men of mature years and in full possession of their mental faculties, and there is nothing in this record to show that they did not execute the instrument in question with full knowledge of all the facts. Having alleged that the instrument was obtained by fraud, the burden was on them to prove the allegation, and this they have failed to do. While they claim that it was their understanding that the paper they were signing was a mere temporary agreement giving authority to Mrs. Worst to arrange for the burial of Miss Samuels, their claim is not supported by the record. Lohrentz testifies that he was told to prepare a paper that would

authorize Mrs. Worst to pay the debts and funeral expenses of Miss Samuels, and that whatever then remained of the property left by the deceased Mrs. Worst was to have. He testifies that he explained fully to appellants that the instrument they were signing released all of their interest in the estate. In a case of this kind it is proper for the court to resort to parol evidence in order to place itself in the position of the contracting parties, so that in construing the writing it may understand the language used in the sense intended by the persons using it. (*Wilson* v. *Roots,* 119 Ill. 379; *Wood* v. *Clark,* 121 id. 359.) Relying upon the assignment executed by appellants, appellee contracted to pay, and did pay, the undertaker's bill, and this was ample consideration for the assignment notwithstanding the property received under it was worth several times the amount of the bill. In equity the instrument in question was sufficient to convey the real estate if it was the intention of the parties that it should have that effect, (*Wilson* v. *Kruse,* 270 Ill. 298; *Barnes* v. *Banks,* 223 id. 352; *Ashelford* v. *Willis,* 194 id. 492;) and we think the evidence abundantly supports appellee's position as to the intention of the parties. The word "estate," used in the instrument, is sufficiently comprehensive to include both real and personal property. Where there are no words in the context to limit it, the word "estate," when used in an instrument of conveyance, is usually held to include every kind of property. *Thornton* v. *Mulquinne,* 12 Iowa, 549, 79 Am. Dec. 548; *Godfrey* v. *Humphrey,* 18 Pick. 537, 29 Am. Dec. 621; *Powell* v. *Woodcock,* 149 N. C. 235, 62 S. E. 1071.

Appellants executed the instrument of March 26 with intention of releasing all of their interest in the estate of a deceased sister in whom they were not interested, in consideration of appellee's paying all the debts of the estate, including funeral expenses, and they have failed to show that this instrument was not executed freely and volun-

tarily, with full knowledge of all the facts, nor have they shown that appellee has not fully performed her part of the agreement.

The decree of the superior court is affirmed.

*Decree affirmed.*