## L. S. GORDON v. ERSKIN EHRINGHAUS ET AL.

### (Filed 23 September, 1925.)

#### Wills—Residuary Clause—Lands—Specific Devises.

> After making disposition by will of certain of the property by item six, the testator provides "whatever may remain of my estate both real and personal" to be divided and distributed, with particular direction as to named devisees, with further direction that if the devisees or any of them should caveat the will, they should receive ten dollars each: *Held*, under the presumption against intestacy and construing the will to effectuate the testator's intent, a tract of land not specifically mentioned in the will came within the meaning of the residuary clause and not excluded because a lot of land had been described therein, as particularly subject to its provisions.

APPEAL by several of the respondents from *Devin, J.*, from PASQUO-TANK.

Petition for a redistribution of a portion of the funds derived from a sale of certain lands belonging to D. B. Bradford at the time of his death, and which, it is alleged, passed to the devisees mentioned in the residuary clause of his will.

From an order declaring and adjudging the interests of the respective parties in the funds derived from a sale of the lands had for partition, as passing under the testator's will, some of the respondents appeal.

*McMullan & LeRoy for appellants.*
*Ehringhaus & Hall for appellees.*

STACY, C. J. This is a companion case to *Whitehurst v. Gotwalt*, 189 N. C., 577, heard at the last term, and in which we had occasion to consider the validity and meaning of a forfeiture clause or clause against contest, with limitation over, contained in the will of D. B. Bradford. There the litigants were divided into three classes, and such division is applicable here: (1) "Caveators," or those whose interests in the lands had been forfeited, under the terms of the will, because of their effort to caveat same in the absence of any probable cause therefor; (2) "Neutrals," or those who took their original interests under the will, unaffected by the caveat proceedings; and (3) "Propounders," or those who stood firmly by testator's will, and whose devises were increased by an equal division among them (per stirpes) of the forfeited interests of the caveators.

The testator foresaw a possible contest over his will, and he undertook to provide against it. But should his efforts in this respect prove abortive, as they did, it was his purpose to require the beneficiaries named thereunder to elect as to what attitude they would take in

regard to such a contest. Following this election or choice, the testator then declared in substance: "He that is for me, let him be for me still; he that is against me, let him be against me still; and he that is neutral, let him be neutral still."

In deference to the decision rendered in *Whitehurst v. Gotwalt, supra,* it is conceded by counsel in the present proceeding, that if the property here in question, passed under the terms of the Bradford will to the "legatees or beneficiaries" mentioned in item six thereof, the judgment should be affirmed; otherwise, it should be reversed. And, in the latter event, it is stipulated that the funds arising from a sale of the property shall be adjudged to belong to the heirs at law of the testator, as undevised property. The appeal, therefore, presents for decision the single question as to whether the lands described in the petition passed under the following item in the will of D. B. Bradford:

"Sixth: After the above bequests have been provided for and paid then whatsoever may remain of my estate, both *real and personal* I direct and will, shall be divided and distributed in the following manner to the parties herein named.

"To my dear wife, Minerva I. Bradford, I give (certain stocks and bonds, specifically enumerating them; all moneys in bank, and a business lot in Elizabeth City, describing same; none of which is here in controversy). I also give to her the one-third interest in whatever I may own, at the time of my death in the lot, situated in Elizabeth City, N. C., and bounded on the north by Main Street, on the east by Poindexter Street, on the south by Fearing Street, and on the west by McMorine Street; then I give to my nephew, John B. Fearing, two-ninths (2-9) interest in the above described lot; and to the heirs of my nephew, Woodson B. Fearing, deceased, viz.: D. B. Fearing, Keith Fearing, and Woodson Fearing, one-ninth (1-9) interest in said lot above to be equally divided between them; to my nephew, John B. Griggs, and my niece, Mary Whitehurst, I give two-ninths (2-9) to be equally divided between them; and to the heirs of my first wife's (Matilda G. Bradford) brothers, Erskin Ehringhaus, Blucher Ehringhaus, deceased, John C. Ehringhaus, deceased, and her brother, William F. Ehringhaus, and the heirs of her sister, Christena Culpepper, deceased, I do give one-ninth (1-9) part interest in the said described lot, to be equally divided between them. Should any of the nephews or nieces of my first wife die without lawful issue, begotten of their body, the part or share intended for them shall revert to those of them then living at the time of my death.

"I do hereby and herein instruct and demand of my executrix that if any attempt is made on the part of any of the beneficiaries herein named to defeat, nullify or contest in law or otherwise, the disposition or divi-

sion of my property as herein made by me, that those so endeavoring to defeat, nullify or contest my wishes as herein expressed, *shall not be entitled to the part I have intended for them,* and shall only receive the sum of ten dollars ($10.00) each, and that part or portion of my estate herein set apart for them, shall revert to the other legatees or beneficiaries as may stand firmly by my wishes as herein expressed and defend the distribution and disposal herein made by me of my property."

The lands in question are not specifically mentioned in testator's will; and it is the position of the appellants that they cannot be held to have passed under item six, because the general description of "whatsoever may remain of my estate, both real and personal," is followed by a particular description which, appellants say, shows an intention on the part of the testator to exclude all other property not specifically mentioned therein. The following authorities are cited by appellants as supporting, in tendency at least, their view of the law: *Kidder v. Bailey,* 187 N. C., 505; *Johnston v. Case,* 131 N. C., 494; *Peebles v. Graham,* 128 N. C., 218; *Midgett v. Twiford,* 120 N. C., 4; *Cox v. McGowan,* 116 N. C., 131; *Alexander v. Alexander,* 41 N. C., 229; *Reddick v. Leggat,* 7 N. C., 539.

The appellees, on the other hand, take the position that the testator intended to divide all the rest and residue of his property (except as otherwise exclusively given to his widow) among the beneficiaries named in item six of his will, in the same manner and proportions as the last lot of land is devised therein. We are not now concerned with the proportionality of the shares of the respective parties, nor with the quere as to whether the character of the property, real or personal, would make any difference. These matters have been eliminated by consent of counsel. The only question for decision is whether the lands, described in the petition, passed under item six of the will. The whole case pivots on the answer to be made to this question. The words used are plenary, and we are of opinion that they must be held to include all of the residue of testator's property, both real and personal. "It is generally conceded that, in the construction of a will, the cardinal purpose is to ascertain and give effect to the intention of the testator—not the intention that may have existed in his mind, if at variance with the obvious meaning of the words used, but that which is expressed by the language he has employed. The question is not what the testator intended to express, but what he actually expressed in his will, when all its provisions are considered and construed in their entirety." *Adams, J.,* in *McIver v. McKinney,* 184 N. C., p. 396.

The record is silent as to whether the lands in question were acquired by the testator before or after the making of his will; but this, we

apprehend, can make no difference, as the will is to be construed as having been executed immediately prior to testator's death, unless a contrary intention appear therefrom. C. S., 4165; *Brown v. Hamilton,* 135 N. C., 10.

When a person, who is capable of doing so, undertakes to make a will, the law presumes that he did not intend to die intestate as to any part of his property. *Allen v. Cameron,* 181 N. C., 120; *Austin v. Austin,* 160 N. C., 367; *Powell v. Woodcock,* 149 N. C., 235; *Blue v. Ritter,* 118 N. C., 580; *Reeves v. Reeves,* 16 N. C., 386. And in addition to this presumption against partial intestacy, we think the language used, in item six of the will before us, is sufficient to cover all of testator's property. *Foy v. Foy,* 188 N. C., 518. "The presumption is that every one who makes a will intends to dispose of his whole estate, and one purpose of a general residuary clause is to dispose of such things as may have been forgotten or overlooked, or may be unknown." *Pearson, J.,* in *Ireland v. Foust,* 56 N. C., 498.

For a helpful discussion of the subject, containing many arguments in support of the conclusion here reached, see opinion of *Mr. Justice Strong* in *Given v. Hilton,* 95 U. S., 591, 24 L. Ed., 458, and opinion of *Gray, J.,* in *Miner's Case,* 146 N. Y., 121.

In dealing with the residuary clause of a will which is ambiguous, it is required, by the general rule of construction, that a liberal, rather than a restricted, interpretation be placed upon its terms; for a partial intestacy may thereby be prevented, which, it is reasonable to suppose, the testator did not contemplate. *Lamb v. Lamb,* 131 N. Y., 227. And in performing the office of construction, the Court may reject, supply or transpose words and phrases in order to ascertain the correct meaning and to prevent the real intention of the testator from being rendered abortive by his inapt use of language. *Carroll v. Mfg. Co.,* 180 N. C., 366; *Taylor v. Johnson,* 63 N. C., 381.

While conceding that the above rule of construction makes for the appellees' position on the instant record, appellants, who would take under the canons of descent, in case of intestacy, invoke the equally well established rule of construction that heirs should not be disinherited, except by express devise or necessary implication. *Whitfield v. Garris,* 134 N. C., 24; *Dunn v. Hines,* 164 N. C., 113. There can be no doubt as to the establishment and soundness of this latter rule against disinheritance; and our present interpretation in no way infringes upon it, for the testator, in the will before us, has expressly devised his property to others. "There is a cardinal rule, also, that the heir should not be disinherited except by express devise or by one arising from necessary implication, by which the property is given to another,

though the right of the testator to omit the heir from his will is not to be denied or curtailed." Underhill on Wills, sec. 466; *Kidder v. Bailey, supra.*

It is pointed out in appellees' brief that testator undoubtedly thought he was disposing of his entire estate, because it is provided in the forfeiture clause that, in case of a contest, the caveators "shall not be entitled to the part I have intended for them, and they shall only receive the sum of ten dollars ($10.00) each." The limitation of such interests to only $10.00 each would seem to be inconsistent with any idea of partial intestacy, as appellants would thereby share in a portion of testator's estate, being, as they are, in the class of heirs.

It follows from what is said above that the record is free from error. The cases, cited and relied upon by appellants, are not in conflict with our present position.

Affirmed.